[No. 2034]

IN THE MATTER OF THE APPLICATION OF CHARLES SIMMONS, EARL SIMMONS, AND BERT SIMMONS, FOR A WRIT OF HABEAS CORPUS.

1. HABEAS CORPUS—RIGHT TO RELIEF—DE FACTO JUSTICES OF THE PEACE.

> Under Rev. Laws, 4926, which provides that when any justice of the peace, through ill health or other cause, is prevented from discharging his duties, he may invite another justice of the same county to attend to such duties, where a justice deemed himself disqualified to try a criminal case and called in another justice, and all parties assumed the request was lawfully made, the latter justice was at least a *de facto* officer, rendering a judgment of conviction valid and not subject to collateral attack on *habeas corpus*.

2. CRIMINAL LAW—FORMER JEOPARDY.

> An acquittal in such case would have barred a subsequent prosecution.

ORIGINAL PROCEEDING. Application of Earl Simmons and others for a writ of *habeas corpus*. **Proceeding dismissed.**

The facts sufficiently appear in the opinion.

*Salter & Robins*, for Petitioners:

Bias or prejudice is not a disqualification of a justice of the peace such as to prevent him from attending to his official duties under the provisions of Rev. Laws, 4926 (*Allen* v. *Riley*, 15 Nev. 455). "Unable to attend" con-

templates physical inability (66 Pac. 342). Bias is not a disqualification under Rev. Laws, 4865.

*Cleveland H. Baker*, Attorney-General, for Respondent:

If the point complained of be error, it cannot be raised on *habeas corpus*, as B. L. Hood was a *de facto* officer. (Rev. Laws, 4926, 7478; *State* v. *Rhodes*, 6 Nev. 364; *State* v. *Curtis*, 9 Nev. 325; *Walcott* v. *Wells*, 21 Nev. 47; 23 Cyc. 9, 582, 618, 619; 29 Cent. Dig. 1573; *Appeal of Peyton*, 12 Kan. 407.)

By the Court, NORCROSS, J.:

This is an original proceeding in *habeas corpus*. Prior to the hearing on the writ before this court, application for a writ was made to the chief justice and a writ issued returnable before Hon. T. F. Moran, district judge. Hearing was had upon that writ, and the discharge of the petitioners denied, whereupon the application was made to this court. The facts were stipulated and the presence of petitioners waived by respective counsel.

The following are the agreed facts upon which the petitioners rely for their discharge: "That on the 26th day of July, 1912, a complaint under oath was duly filed in the Justice Court of Mazuma Township, in and for the County of Humboldt, State of Nevada, charging the said petitioners with the crime of riot, and that such complaint charged the offense of riot. That thereafter the defendants were brought into court, by virtue of a sufficient warrant, issued upon said complaint, and were arraigned and pleaded not guilty to said offense, and that thereafter the said defendants made an affidavit and motion for a change of venue from said court on the ground that the justice thereof, namely, R. H. Young, was so prejudiced against them that thereafter, and on the same date, the said Justice Young, being then and there a material witness on behalf of the state in the trial of the cause then pending, and feeling disqualified for said reasons to try said cause, invited B. L. Hood, justice of the peace of Lake township, in and for said

county, to hear and try said cause, under the provision
of section 4926, Revised Laws of the State of Nevada.
That thereafter said defendants were tried in said court
before B. L. Hood, acting as such justice of the peace,
as aforesaid, and were thereafter convicted of the crime
of rioting, and were by said court duly sentenced to
serve the term of thirty days in the county jail of Hum-
boldt County at Winnemucca, State of Nevada, and that
a commitment, due in form, was by the said B. L. Hood
thereupon issued, and that under and by virtue of said
commitment the said defendants were on the 27th day
of July, 1912, delivered to be and ever since have been,
and now are, in my custody as the sheriff of Humboldt
County, State of Nevada, and that the term of their sen-
tence has not expired. That thereafter, and within the
time allowed by law, the said defendant duly perfected
an appeal from said judgment to the Sixth Judicial Dis-
trict Court of the State of Nevada, and said appeal is
now pending in said court, but no bond on said appeal
has ever been approved, although the same was fixed by
said Justice R. H. Young at the sum of $300 each."

It is the contention of counsel for petitioner that the
justice of the peace of Mazuma township had no author-
ity, under the provisions of section 4926 of Revised
Laws, to call in another justice of the county to preside
in his court and try petitioners, for the reason that the
facts did not present a situation authorizing the calling
of another justice within the meaning of that section.
In addition to taking a contrary view as to the construc-
tion of the statute, the attorney-general contends that
the justice of the peace of Lake township, while presid-
ing in the justice's court of Mazuma township in the
trial of petitioners, was at least the *de facto* justice of
that court for the time being, and his authority there-
fore not open to collateral attack in this proceeding.

Section 4926 of Revised Laws provides: "Whenever
any justice of the peace, in consequence of ill health,
absence from his township, or other cause, shall be pre-
vented from attending to his official duties, it shall be

lawful for him to invite any other duly qualified justice of the peace of the same county to attend to his official duties, including that of registry agent, instead of such absent or disqualified justice of the peace; *provided,* such temporary vacancy, resulting from absence or disqualification, shall not be filled for more than thirty days at any one time."

Counsel for petitioners rely solely upon the proposition that the fact that the justice of the peace of Mazuma township was a material witness for the state against petitioners and deemed himself prejudiced against them was not a disqualification within the meaning of the words "or other cause," used in the section of the statute *supra,* and therefore he was without authority to call in another justice to preside, and, for that reason, such other justice was without power to try petitioners upon the complaint against them, and the judgment of guilty and sentence thereon was *coram non judice* and void.

If, as contended by the attorney-general, the justice of Lake township, while presiding in Mazuma township upon the trial of petitioners, was the justice *de facto* for the time being of said Mazuma township, the judgment against petitioners was valid, and the authority of such *de facto* justice is not open to collateral attack upon a proceeding in *habeas corpus.* (*Walcott* v. *Wells,* 21 Nev. 47, 9 L. R. A. 59, 37 Am. St. Rep. 478; *Ex Parte Fedderwitz,* 62 Pac. 935; *In re Corrigan,* 37 Mich. 66; *Ex Parte Parks,* 3 Mont. 426; *In re Johnson,* 15 Neb. 512, 19 N. W. 594; *In re Radl,* 86 Wis. 645, 57 N. W. 1105, 39 Am. St. Rep. 918; 24 Cyc. 416.)

This court in a number of cases has had occasion to consider what constitutes a *de facto* officer. In *Walcott* v. *Wells, supra,* it was said: "What constitutes a *de facto* officer? This court, in *Mallett* v. *Uncle Sam G. & S. M. Co.,* 1 Nev. 197, said that an officer *de facto* is on the one hand distinguished from a mere usurper of the office, and on the other hand from an officer *de jure.* In *Meagher* v. *Storey Co.,* 5 Nev. 245, it was said that acts

performed by a city recorder as a committing magis- trate, though the statute authorizing him to so act is unconstitutional and void, are to be regarded as the acts of a *de facto* officer, and valid as to third persons and the public.  In *State ex rel. Corey* v. *Curtis,* 9 Nev. 338, we had occasion to examine and discuss, to a limited extent, the question as to what constitutes an officer *de facto.* The rules taken from the authorities were there announced as follows: (1) One who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.  (2) One who actually performs the duties of an office, with apparent right, and under claim and color of an appointment or election. (3) One who has the color of right or title to the office he exercises.  (4) One who has the apparent title of an officer *de jure.*  In *State* v. *Carroll,* Chief Justice Butler gave the following complete definition of a *de facto* officer: 'An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised:  First—Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.  Second—Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.  Third— Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise; such ineligibility, want of power, or defect being unknown to the public.  Fourth—Under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such.' (38 Conn. 471.)  This definition has been accepted,

approved, and followed, in its entirety, in all the numerous subsequent cases where the question has been discussed, and was referred to with approbation by this court in *State ex rel. Harris* v. *Blossom*, 19 Nev. 317.''

"A *de facto* justice of the peace is one who *colore officii* claims and assumes to exercise the authority of the office, is reputed to have it, and in whose acts the community acquiesces." (24 Cyc. 405.)

The only question that could have arisen upon a direct attack upon the authority of Justice Hood to act in Mazuma township in the case against petitioners was as to whether the words "or other cause," in section 4926, *supra,* should be given a broad or restricted construction. It is, we think, quite manifest that there is room for a difference of opinion and argument as to whether the words in question are broad enough to permit the facts stated in this case to constitute a disqualification of the justice within the meaning of the section so as to authorize his calling another justice of the county to preside. The justice of the peace of Mazuma township deemed that the circumstances were such as to authorize him, under the statute, to call in another justice to act in the case. The justice called considered that he was legally authorized to preside over the court and try petitioners, and upon such assumed authority did preside over the court, try and convict petitioners. His authority to preside was not questioned upon the trial either by the state or the petitioners, but all acquiesced in his assumed authority to so preside.

In *Vanderberg* v. *Connoly*, 18 Utah, 112, 54 Pac. 1097, *supra,* the court said: "But the view we take of this case does not render it necessary to decide whether the law, under which Blazer, the justice, was appointed, should have been held valid had his authority been questioned by a direct proceeding by the territory. In this case a collateral attack is made upon his authority to act as such, and the question is: Can he be regarded as a *de facto* officer? If he can be held an officer *de facto*, it is unnecessary to decide that he was or was not a jus-

tice of the peace *de jure*. Whether Blazer's appoint-
ment, qualification, and assumption to act as justice of
the peace was in pursuance of a valid law presents a
question as to which there must be a doubt, without the
judgment of a competent court affirming or denying its
validity—a question as to which lawyers and courts
might differ. A law might be so palpably unconstitu-
tional as to be so clearly void as to leave no room to doubt
its invalidity. In the latter case courts have held that
appointments to judicial office should not give color of
right to exercise the powers purported by such uncon-
stitutional law. But as to this proposition there is a
conflict in the authorities. But when the unconstitu-
tionality or invalidity of the law is doubtful, and the
officer has been appointed and qualified, and has dis-
charged the duties pertaining to it without question, as
it appears from the record Blazer had, litigants in his
courts should be protected—that as to the public he
should be held a *de facto* officer."

The justice of Lake township was qualified, upon
proper request from the justice of Mazuma township,
to preside over and conduct the business in the court of
the latter township. Request was made by the latter
justice for the former justice to preside, which request
was complied with; all parties assuming the request to
have been lawfully made. There being some reasonable
basis for such assumption of regularity, we think the
justice of Lake township while presiding in the case
against petitioners in Mazuma township was at least the
*de facto* justice of that court for the time being and his
acts in question valid.

Had petitioners been acquitted instead of having
been convicted upon the trial, such acquittal would have
been a good defense to any further prosecution on the
same charge.

The proceedings are dismissed.